Filed 1/10/14  Holmes v. HSBC Bank USA CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DENNIS RICKY HOLMES,<br><br>                 Plaintiff and Appellant,<br><br>     v.<br><br>HSBC BANK USA et al.,<br><br>         Defendants and Respondents. | B236394<br><br> (Los Angeles County<br>  Super. Ct. Nos. BC445001 and<br> 12UI6085) |

APPEAL from the judgments of the Superior Court of Los Angeles County. Amy D. Hogue, Judge.  Affirmed.

Brifman Law Corporation and Mark Brifman for Plaintiff and Appellant.

Bryan Cave, Glenn J. Plattner, and Curt R. Wiele for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

Plaintiff and appellant Dennis Ricky Holmes seeks reversal of the judgment for defendants and respondents HSBC Bank USA National Association (HSBC) and Recontrust Company, N.A. (Recontrust) after the court sustained a demurrer without leave to amend to the first amended complaint alleging quiet title, wrongful foreclosure, breach of contract and cancellation of instrument.

Plaintiff obtained a $1 million real estate purchase loan secured by a deed of trust against property in Los Angeles. The deed of trust named Recontrust as the trustee. Plaintiff defaulted in payment of the loan. Recontrust initiated foreclosure proceedings and conducted a nonjudicial foreclosure sale of plaintiff's home to HSBC. Plaintiff does not allege tender of any part of the amount due and continued in possession of the property for nearly three years until HSBC obtained an unlawful detainer judgment against him.[1]

In his brief on appeal, plaintiff states "one would not be surprised if, figuratively, the court's eyes glazed over with every matter relating to foreclosures, accompanied by a groan of 'not another one.' " To the contrary, it is hard to imagine having a hardboiled attitude toward one who has lost a home to foreclosure. Among the appeals we have decided in the past few years alleging wrongful foreclosure, a few have included allegations of predatory lending. But this is the first appeal that may fairly be characterized as a case of "predatory borrowing."

Because we find the first amended complaint did not state facts showing any wrongful conduct by defendants or any entitlement to relief from the completed foreclosure, and plaintiff does not seek leave to amend and does not argue the defects could be cured by amendment, we affirm the judgment dismissing the action, as well as the judgment of possession in the unlawful detainer proceeding.

---

[1]    We consolidated plaintiff's appeal of the unlawful detainer judgment (case No. BV030399) with this appeal, as they both raised the same issue, and the parties stipulated they should be resolved together.

2

## BACKGROUND

Plaintiff sued Recontrust, identified in the deed of trust as the trustee securing his $1 million loan, and HSBC, to which Recontrust issued a trustee's deed upon sale. Plaintiff had obtained a real estate purchase loan of $1 million from Countrywide Home Loans, Inc., secured by a deed of trust against the property that was recorded on October 13, 2006. The deed of trust identified plaintiff as the borrower, Countrywide as the lender, Recontrust as the trustee, and MERS (Mortgage Electronic Registration Systems, Inc.) as the beneficiary and nominee to act for the lender and lender's successors and assigns.

In the deed of trust, plaintiff granted title to the property to Recontrust with the power of sale. The deed of trust provided: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the Security Instrument."

Plaintiff admits the lender had a valid lien on the property pursuant to the deed of trust. Plaintiff admits Recontrust was the trustee named in the deed of trust. Plaintiff admits the deed of trust was duly recorded on October 13, 2006. The notice of default was recorded by Recontrust on March 27, 2009, "as an agent for the Beneficiary." The notice of default identified MERS as the beneficiary, and advised plaintiff to contact MERS to arrange for payment to stop the foreclosure. Plaintiff did not deny he defaulted on the note or allege that he tendered any part of the delinquent payment that was due. Plaintiff admits that on April 5, 2010, Recontrust conducted a nonjudicial foreclosure sale of the property and issued a trustee's deed upon sale in favor of HSBC. At oral argument, plaintiff's counsel confirmed that plaintiff does not allege there was any irregularity in the conduct of the nonjudicial foreclosure sale.

3

The crux of plaintiff's complaint is that only the lender, as holder of the note, is authorized to "commence, continue or consummate a foreclosure of the Deed of Trust albeit acting through the good offices of the Trustee." The sole basis for the claim that only the lender can foreclose is one sentence buried in paragraph 22 of the deed of trust, a single sentence which plaintiff contends should be construed in isolation from all the other provisions in the deed of trust.

Paragraph 22 consists of three paragraphs. The second paragraph begins with this sentence: "If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold." Plaintiff alleges this means "the Lender (or its successors or assigns) is the only party to the Loan that can declare it in default or invoke the power of sale therein. The Loan has not been declared in default, nor has the power of sale been invoked, by the Lender." Plaintiff alleges, therefore, since no named defendant was entitled to any money from plaintiff, plaintiff was not required to tender any funds on his delinquent loan.

In effect, plaintiff contends this one sentence in the deed of trust obliterates and overrides all other provisions of the deed of trust. Paragraph 22 appears on pages 13 and 14 of the standardized, single-spaced deed of trust (consisting of 25 pages, including all riders and exhibits thereto). We recognize, of course, that paragraph 22, in its entirety, contains significant provisions of the deed of trust, because it describes the rights and duties of the parties in the event of acceleration of payments following borrower's breach of any provision. However, nothing in paragraph 22 expressly or impliedly negates other provisions of the deed of trust.

Most notably, the very first substantive provisions of the deed of trust – appearing at page three, immediately after the "Definitions" – are the provisions describing the "Transfer of Rights in the Property." The first sentence under the heading "Transfer of Rights in the Property" identifies MERS as the beneficiary nominated by the lender to act for the lender and its successors and assigns. The second sentence states the deed of trust secures to the lender repayment of the loan and borrower's performance under the note

4

and deed of trust. The third sentence states that, for the purpose of securing borrower's repayment, borrower irrevocably grants and conveys the property to the trustee (Recontrust) with the power of sale of the property. The next provisions include a legal description of the property. The legal description is followed by provisions empowering MERS, as nominee for the lender and lender's successors and assigns, with the right to exercise any or all of the interests granted by the borrower in the deed of trust, including the right to foreclose and sell the property.

These standardized provisions in deeds of trust have been consistently interpreted by the courts as authorizing MERS to (1) invoke the power of sale upon a borrower's default in payment, and to (2) cause the trustee to give notice of default and conduct a foreclosure sale.

## DISCUSSION

A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed.[2] (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) When a demurrer is sustained without leave to amend, as it was here, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*)

---

[2] The trial court took judicial notice of the deed of trust and notice of default, which we review for abuse of discretion. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264 (*Fontenot*).) It is well settled that the documents at issue are subject to judicial notice, so we find no abuse of discretion. (*Id.* at pp. 266-267.) Moreover, we disagree with plaintiff's contention a court may not take notice of "factual statements made in the Deed of Trust and in the Notice of Default regarding MERS." A court may properly take notice of MERS's status as a beneficiary because its status is not reasonably subject to dispute. (*Id.* at p. 266.)

5

"The plaintiff bears the burden of proving there is a reasonable possibility of amendment. . . . [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' . . . The plaintiff must clearly and specifically set forth the 'applicable substantive law' . . . and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. . . . Allegations must be factual and specific, not vague or conclusionary. . . . [¶] The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. . . . Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44, citations omitted.)

Plaintiff has offered no authority showing the viability of any of his causes of action, and he does not seek leave to amend to cure any defect in the operative complaint. Plaintiff acknowledges in his brief that we would have to depart from "a mass of cases seemingly identical with his" in order to reverse the judgment. Yet he offers no explanation or reasoned argument demonstrating why the thoroughly analyzed, on-point authorities are "flawed and superficial" or otherwise wrongly decided. (Cal. Rules of Court, rule 8.204(a)(1)(B); see *In re Smith* (1970) 3 Cal.3d 192, 197 [counsel may seek changes in the law, but must support request with reasoned argument and citations to authority].)

We shall only briefly discuss below some of the authorities that establish defendants acted in conformance with the nonjudicial foreclosure statutes. We note that the cases cited below are also cited with approval in The Rutter Group's California Practice Guide on Real Property Transactions under the topic heading "Authority of lender's (beneficiary's) nominee to initiate foreclosure proceedings may not be

6

challenged." (Greenwald et al., Cal. Practice Guide: Real Property Transactions (The Rutter Group 2013) ¶¶ 6:524e, 6:524f, p. 6-96.10 et seq. (rev. #1, 2013).) In other words, the law is clear that plaintiff's challenge is without any support in statute, case law, or scholarly writing.

Before we turn to these authorities, we will first mention some cases, mostly from federal district courts, that plaintiff has *not* invoked, the parties to this appeal did *not* discuss in their briefs, and that do *not* have any application to the allegations in this lawsuit; yet the dissent discusses these cases at some length under the rubric of "cases in [the] post-2008 financial meltdown era." (See *Barrionuevo v. Chase Bank, N.A.* (N.D.Cal. 2012) 885 F.Supp.2d 964, 973-974; *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1097; *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1378-1379; *Sacchi v. Mortgage Elec. Registration Sys.* (C.D.Cal. June 24, 2011, No. CV 11-1658 AHM (CWx)) 2011 U.S.Dist. Lexis 68007, *14-*16; *Ohlendorf v. Am. Home Mortg. Servicing* (E.D.Cal. 2010) 279 F.R.D. 575, 583; *Javaheri v. JPMorgan Chase Bank, N.A.* (C.D.Cal. June 2, 2011, No. CV10-08185 ODW (FFMx)) 2011 U.S.Dist. Lexis 62152, *12-*14.)

These cases recognized a wrongful foreclosure claim may rest on allegations that the party initiating foreclosure was not the current beneficiary under the deed of trust because the lender had sold the note in a pool of mortgage-backed securities before the borrower's default, and no assignment had been recorded before the new beneficiary invoked the power of sale. In those cases, the courts could not determine as a matter of law whether the defendants had any beneficial interest in the deed of trust when they acted to foreclose. These cases do not apply here because plaintiff alleged "there has never been an assignment of the note to any Defendant named herein." Nowhere in the first amended complaint does plaintiff allege his note was part of a mortgage pool held in trust as collateral for a mortgage-backed security that was sold in the secondary mortgage market. And it may be determined as a matter of law from the judicially noticed deed of trust and notice of default that MERS was named in plaintiff's deed of trust as the lender's beneficiary and Recontrust was named as trustee.

7

Turning now to the case law that *does* apply here, courts have routinely rejected the theory that MERS was not authorized to initiate a foreclosure sale. (See *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1503-1505; *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46; *Fontenot*, *supra*, 198 Cal.App.4th at p. 270; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1151, 1158 (*Gomes*).) That is because it is well settled that the trustee, mortgagee, or beneficiary may commence foreclosure proceedings. (Civ. Code, § 2924, subd. (a)(1) [notice of default may be recorded by "[t]he trustee, mortgagee, or beneficiary, *or any of their authorized agents*" (italics added)].)

Courts have also rejected the claim that the foreclosure is voidable because MERS, the trustee, or other defendant never took actual possession of the original promissory note. There is no requirement in the comprehensive foreclosure scheme set forth in Civil Code sections 2924 through 2924k that only the holder of the original note may foreclose. (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440-441 (*Debrunner*); *Gomes*, *supra*, 192 Cal.App.4th at p. 1154; *Lane v. Vitek Real Estate Indus. Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1099.) Moreover, the statutory provisions governing nonjudicial foreclosure do not require possession of the original note. (See § 2943, subds. (a)(4), (b)(1)-(2) [A trustor, mortgagor, or beneficiary under a deed of trust, may request by written demand "a true, correct and complete *copy* of the note or other evidence of indebtedness." (Italics added.)]

And, while plaintiffs may sue for misconduct occurring during nonjudicial foreclosures, the court in *Gomes* concluded that they may not sue to impose additional requirements on parties initiating foreclosures. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154, fn. 5.) Like the plaintiff in *Gomes*, plaintiff here does not seek a remedy for any misconduct in the foreclosure sale. Instead, he is seeking to impose the additional requirement that the party initiating the foreclosure (such as MERS or the trustee) demonstrate in court that the lender invoked the power of sale after plaintiff defaulted on his loan. We find, like the court in *Gomes*, that for a court to impose such a requirement would be inconsistent with the policy behind the nonjudicial foreclosure statutes. "By

8

asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive nonjudicial scheme. As Defendants correctly point out, Gomes has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated." (*Id.* at p. 1154.) Plaintiff here has also failed to identify any legal authority or other rational basis for us to find that only the lender could invoke the power of sale.

The courts have rejected the analogous argument that the holder in due course provisions of the Commercial Code apply to nonjudicial foreclosure cases. (See, e.g., *Debrunner*, *supra*, 204 Cal.App.4th at pp. 440-441.) The *Debrunner* court's analysis carefully addressed the contention that plaintiff asserts here, too, that recent bankruptcy cases support the notion that we should meld the requirements of the Commercial Code together with the comprehensive foreclosure statutes. We see no reason to add to the *Debrunner* court's analysis rejecting that meritless argument.

Moreover, plaintiff did not allege tender and does not seek leave to amend to allege any facts that might relieve him of this obligation and save the defective first amended complaint. "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." (*Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117; see *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109 [plaintiffs are required to allege tender of amount of secured indebtedness to maintain any cause of action concerning a sale irregularity].) "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." (*FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022; see *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112.)

Courts have recognized some exceptions to the tender rule, such as when the borrower challenges the validity of the underlying debt, asserts a counterclaim or

setoff against the beneficiary or demonstrates the deed of trust is void on its face. (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512.) Plaintiff does not allege there was any irregularity in the sale nor any facts falling within any of the recognized exceptions to the tender rule. Rather, plaintiff alleges that, after his default, his lender did not demand payment, and therefore he was free to ignore the demand of the trustee for payment to the lender's beneficiary – in effect, that he was entitled to possess and occupy the property for free. The exceptions to the tender rule were carved out to do equity, but no equities favor plaintiff and his untenable position in this case. To slightly paraphrase the court in *Shuster*, a case involving the same counsel involved in this appeal, "we are mindful that foreclosures are a far too frequent occurrence in today's difficult financial times. But the hardship must not become a haven for those who, as here, do not appear to make any good faith effort to resolve the issue but, instead, seek shelter in [meritless legal theories concerning] acts that neither misled nor prejudiced them." (*Id.* at p. 513.)

California and the federal courts have recognized the authority of MERS to cause the trustee to initiate and complete a nonjudicial foreclosure sale, pursuant to the exact same provisions in deeds of trust that are contained in plaintiff's deed of trust. (See *Parcray v. Shea Mortg., Inc.* (E.D.Cal. Apr. 23, 2010, No. CV-F-09-1942 OWW/GSA) 2010 U.S.Dist. Lexis 40377, *25-*31 [concluding that MERS had authority to record notice of default, and rejecting argument that only the lender may initiate foreclosure under a deed of trust identical to the one in this case]; see also *Herrera v. Federal National Mortgage Assn.*, *supra*, 205 Cal.App.4th at pp. 1503-1505; *Robinson v. Countrywide Home Loans, Inc.*, *supra*, 199 Cal.App.4th at p. 46; *Fontenot*, *supra*, 198 Cal.App.4th at p. 270; *Gomes*, *supra*, 192 Cal.App.4th at pp. 1151, 1158.)

Plaintiff's argument that one sentence buried in paragraph 22 of the deed of trust somehow negates the express and unambiguous provisions empowering MERS and the trustee to act for the lender to secure repayment of the borrower's debt is bereft of any authority in law or equity. (See Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause

helping to interpret the other"]; *Thompson v. Toll Dublin, LLC* (2008) 165 Cal.App.4th 1360, 1370 [courts interpret contracts as a whole and in context, rather than interpreting provisions in isolation]; *Powers v. Superior Court* (1987) 196 Cal.App.3d 318, 321-322 [when the two provisions in a contract do not conflict, the court will give both effect].) Because plaintiff's claims for quiet title, wrongful foreclosure, breach of contract, and cancellation of instrument all flow from this flawed theory, they each fail. Plaintiff's cause of action for breach of contract also fails for the additional reason that plaintiff has not alleged a contract with these defendants.

## DISPOSITION

The judgments are affirmed. Respondents are to recover their costs on appeal.

GRIMES, J.

I CONCUR:

BIGELOW, P. J.

11

RUBIN, J. – Dissenting

I respectfully dissent.

When appellant Dennis Ricky Holmes borrowed $1 million from Countrywide Home Loans, Inc., he gave Countrywide a promissory note. To secure repayment of his debt to Countrywide, he also signed a deed of trust on his Los Angeles home. As of the filing of his complaint, Holmes alleged that now-defunct Countrywide had not assigned or transferred his promissory note or deed of trust to anyone, including respondent HSBC Bank USA, N.A. or J.P. Morgan Alternative Loan Trust 2007-A1 for which HSBC is trustee. Thus, as the record stands in reviewing a demurrer, lender Countrywide appears to continue to own appellant's note and the security interest under which he owes payments.

Under the loan and deed of trust, *only* Countrywide (or its successors or assignees) can declare Holmes's loan in default. Paragraph 22 of the deed of trust states: "Acceleration; Remedies. *Lender* shall give notice to Borrower prior to acceleration . . . . If the default is not cured on or before the date specified in the notice, *Lender* at its option may require immediate payment in full of all sums secured . . . and may invoke the power of sale and any other remedies . . . . [¶] If *Lender* invokes the power of sale, *Lender* shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of *Lender's* election to cause the Property to be sold. Trustee shall cause this notice to be recorded . . . ." (Italics added.)

According to the first amended complaint, in 2010, the trustee on the deed of trust, respondent Recontrust Company NA, conducted a nonjudicial foreclosure sale of Holmes's house. Although Countrywide had neither declared Holmes in default nor invoked the trust deed's power of sale, Recontrust issued a Trustee's Deed Upon Sale following the foreclosure sale to respondent HSBC as trustee for J.P. Morgan Alternative

1

Loan Trust 2007-A1. The record does not explain – and on demurrer we cannot resolve – how or why J.P. Morgan Alternative Loan Trust 2007-A1 claims an interest in Holmes's mortgage, but I am willing to hazard a guess that it might have something to do with the slicing, dicing, and securitizing of mortgages that was commonplace before Wall Street's meltdown five years ago, a meltdown that led to Countrywide's demise and its absorption by Bank of America. If this case were permitted to go to trial, presumably the true facts would come out as to the HSBC/JP Morgan connection with this loan and whether HSBC/JP Morgan was anything more than a purchaser after foreclosure.[1]

In August 2011, Holmes filed his first amended complaint. He alleged that Countrywide's failure to declare a default or invoke the power of sale meant respondent Recontrust acted without authority when it foreclosed on his home and sold it to HSBC. Therefore, he alleged, the Trustee's Deed Upon Sale was void, giving HSBC no right, title, or interest in his property. Distilled to its essence, Holmes's complaint asserts that respondents "with no right to do so, sold Dr. Holmes's house to HSBC, claiming that HSBC was the entity owed the money by Dr. Holmes (claiming that HSBC is the beneficiary of the deed of trust)."[2]

---

[1]    In their brief on appeal, respondents suggest that Holmes's contention is that "respondents had no right to initiate foreclosure proceedings on the property." If by this statement, respondents meant to imply that both HSBC and Recontrust initiated foreclosure proceedings, then it would appear that HSBC's interest in the property was that of more than just a purchaser.

[2]    Holmes's lawsuit is not a "produce-the-promissory-note" case, and thus his claim for relief does not rest on the failure of HSBC or anyone else to prove it physically possesses his note. (See, e.g., *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440-442 [foreclosing party need not physically possess the note or produce it in court].) Nor is Holmes attempting to delay the foreclosure, because he filed his complaint after Recontrust completed the foreclosure sale. (Cf. *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 (*Gomes*).) Holmes's lawsuit is instead about who owns his promissory note and to whom does he owe repayment.

Respondents HSBC and Recontrust demurred to Holmes's first amended complaint. They asserted he did not state a cause of action for wrongful foreclosure because Recontrust had the authority to foreclose on Holmes's house. Holmes's opposition disagreed, stating his theory of his case as follows: "The basis for this entire action is that no money is owed from Dr. Holmes to any defendant herein, that the only entity owed money by Dr. Holmes is Countrywide, and that Countrywide has not declared the loan in default, nor invoked the power of sale in the deed of trust, nor caused the trustee to execute and record a notice of default . . . ."

At the hearing on the demurrer, the court took judicial notice that Recontrust was the trustee for Holmes's deed of trust. The court also took judicial notice of Recontrust's notice of default and election to sell that preceded the foreclosure sale, and that Recontrust recorded the notice at the behest of MERS. The court expressly declined, however, to take judicial notice that Recontrust acted on Countrywide's behalf. For the purpose of Holmes's opposition to the demurrer, the court accepted as true that Recontrust acted without instructions from Countrywide. The court noted that "the gravamen of the complaint is that Recontrust, as the Trustee, initiated foreclosure proceedings without any instruction or authorization from the lender."[3]

---

**3** In their demurrer, respondents acknowledged that Holmes has alleged that (1) Countrywide took no action and (2) Recontrust lacked authority to foreclose. Respondents say that is not enough: "Plaintiff pleads no facts and cites no law or language from the Deed of Trust to support this assertion, and therefore his purported cause of action for wrongful foreclosure fails." It is unclear what respondents have in mind as to what allegations would be sufficient. Countrywide "has never declared a default . . . nor invoked the power of sale, nor authorized to record any notices at all" is a fairly direct and a clear statement that certain events did not take place. Holmes also specifically alleged that under paragraph 22 of the Deed of Trust it is the lender who must take such action. Lastly, after extensive argument the trial court expressly refused to take judicial notice that Recontrust was acting for Countrywide when it recorded the default. "While the court can take judicial notice of the notice of default, it cannot accept, as true, the recitation that Reconstruct [*sic*] was acting at Countrywide's behest when it recorded the notice of default." Thus there was no basis for concluding on demurrer that Countrywide or anyone else had authorized Recontrust to record the default notice.

I believe the trial court accurately described the state of the pleadings but erred in sustaining the demurrer.

California's nonjudicial foreclosure statutory scheme promotes speed and efficiency in foreclosing on property to enforce a debt. Nonjudicial foreclosure is supposed to be streamlined. Thus, a homeowner traditionally cannot challenge a pending foreclosure with a preemptive lawsuit. "California courts have refused to allow [homeowners] to delay the nonjudicial foreclosure process by pursuing preemptive judicial actions challenging the authority of a foreclosing 'beneficiary' or beneficiary's 'agent.' " (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511-512 [same].)

But the nonjudicial foreclosure statutory scheme, which courts have sustained by largely rejecting homeowners' attempts to encumber the system with additional procedural safeguards beyond those contained in the foreclosure statutes, was written in a bygone era, and that was then and this is now. The lending/foreclosure process which is now playing out in the courts and elsewhere bears little resemblance to what happened with the mortgages of our grandparents. The common law evolves to meet new challenges from new circumstances. In a quip often attributed, perhaps incorrectly, to the renowned economist John Maynard Keynes, "When the facts change, I change my mind. What do you do sir?" I believe we have reached the time to make clear a homeowner's right to challenge a foreclosure based on the foreclosing party's absence of authority from the beneficiary of the homeowner's deed of trust.

---

The majority cites *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 266 for the proposition that from a recorded deed of trust a court can properly take judicial notice that MERS is a beneficiary of the deed of trust. This may be so but it still does not answer the question of whether Countrywide directly or indirectly authorized Recontrust to foreclose.

There was a time not long ago when a foreclosing trustee customarily enforced collection of a homeowner's debt at the direction of the lender or the lender's successor whose place in the promissory note's chain of title was easily ascertained and apparent to all. Widespread securitization of mortgages in the years before the financial meltdown of 2008, an economic catastrophe triggered in part by the often unlawful repeated packaging, selling, repackaging, and reselling of mortgages in which the Mortgage Electronic Registration Systems (MERS) played a pivotal role, mostly unseen and poorly understood by homeowners, investors, regulators, and the public, has changed much of that. "MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record." (*Gomes, supra,* 192 Cal.App.4th at p. 1151.)

In this new era, ownership of a homeowner's promissory note and of the beneficial interest in a deed of trust may have changed hands many times to the point where reliable proof of who owns what is hard to come by. "A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system." (*Gomes, supra,* 192 Cal.App.4th at p. 1151.) As one experienced federal district court judge noted in seeming dismay, the mortgage industry's lending practices fueled by Wall Street's creation of ever-newer and arcane financial products has upended traditionally simple, clear-cut foreclosure proceedings. The federal judge said, "This Court has dealt with numerous mortgage-related cases, and in the process of wading through them it has learned that seemingly straightforward transactions—nonjudicial foreclosures—are not at all routine. Indeed, all too often they are mystifying, because of the utterly confusing assignments, substitutions, and other transactions (some recorded, some not) conducted by a host of entities." (*Sacchi v.*

5

*Mortgage Elec. Registration Sys.* (C.D.Cal. June 24, 2011 No. CV 11-1658 AHM (CWx)) 2011 U.S.Dist. Lexis 68007, *3.)

Perhaps in recognition that the mortgage business is not what it once was, courts have started to permit homeowners to challenge the loss of their homes on the ground that the foreclosing party did not own the homeowner's promissory note or security interest and did not represent the party who did. "[O]nly the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law." (*Barrionuevo v. Chase Bank, N.A.* (N.D.Cal. 2012) 885 F.Supp.2d 964, 972.) "Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a Notice of Default and initiate nonjudicial foreclosure." (*Id.* at pp. 972-973.) Among the cases in this post-2008 financial meltdown era are:

*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1088, 1097: A homeowner successfully "raised questions regarding the chain of ownership, by contending that the defendants were not the lenders or beneficiaries under his deed of trust and, therefore, did not have the authority to foreclose."

*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1378-1379: Deutsche Bank was not entitled to summary judgment on a wrongful foreclosure claim because it failed to show a chain of ownership that would establish it was the true beneficiary under the deed of trust.

*Barrionuevo v. Chase Bank, N.A., supra,* 885 F.Supp.2d at pages 973-974: The court permitted a cause of action for wrongful foreclosure where a homeowner alleged that Chase lacked authority to foreclose because Washington Mutual securitized the subject loan, divesting itself of any interest, prior to transferring its beneficial interest to Chase.

*Sacchi v. Mortgage Elec. Registration Sys., supra,* 2011 U.S.Dist. Lexis 68007, *16-21: A homeowner stated a cause of action for wrongful foreclosure where MERS transferred a lender's beneficial interest in a deed to the lender's successor *after* the

6

successor executed without authority a substitution of trustee, making the new trustee's notice of sale invalid.

*Ohlendorf v. Am. Home Mortg. Servicing* (E.D. Cal. 2010) 279 F.R.D. 575, 583: Permitted a homeowner to pursue a claim for wrongful foreclosure where the foreclosing party may have relied on a series of backdated transfers of a deed of trust's beneficial interest to pursue foreclosure. Documents showed that MERS was beneficiary under the deed of trust at the time foreclosure proceedings began, but the notice of default listed Deutsche Bank as beneficiary and a mortgage servicer as trustee. To rectify the "taint" of the inconsistent recorded documents, MERS filed a backdated assignment of the beneficial interest to the mortgage servicer, and 11 seconds later the mortgage servicer recorded a backdated assignment of the deed of trust to Deutsche.

*Javaheri v. JP Morgan Chase Bank, N.A.* (C.D.Cal. June 2, 2011, No. CV10-08185 ODW (FFMx)) 2011 U.S.Dist. Lexis 62152, *12-14: A homeowner stated a claim for wrongful foreclosure against J.P. Morgan Chase by alleging that lender Washington Mutual sold the homeowner's promissory note to an investment pool, which thereafter transferred the promissory note to another investment pool, preventing J.P. Morgan Chase from obtaining the note when it acquired Washington Mutual's assets because the note was no longer owned by Washington Mutual at the time of the assignment.

I agree with the majority that these cases describe situations not completely found in the present case. That is not my point in citing them. These authorities are useful because they spell out the framework by which courts should analyze carefully lawsuits challenging foreclosures.

To challenge the foreclosure of his home, Holmes must articulate specific facts that demonstrate respondents lacked the authority to foreclose. (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 [homeowner permitted to challenge foreclosure if homeowner alleges " 'specific factual x' for the claim that the foreclosure was not initiated by the correct person"]; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 263, 272 [plaintiff who sought to demonstrate that the nonjudicial foreclosure sale was invalid was "required to allege that

7

[HSBC as trustee for securities trust that purportedly owned homeowner's promissory note] did not receive a valid assignment of the debt *in any manner*"].)

Here, Holmes alleges that MERS can act only when the lender (or the lender's successor) who owns the note invokes the power of sale. Thus, if respondent HSBC was a successor to Countrywide and owned Holmes's promissory note, either for itself or as trustee for J.P. Morgan Loan Trust, Holmes concedes MERS may act for HSBC. The central allegation of Holmes's complaint is that HSBC does not own Holmes's promissory note because Countrywide did not assign, sell, or transfer it to *anyone*. Thus, Holmes alleges, HSBC was an interloper that had no legal interest or claim to his note, his deed of trust, or his home. It is not a far-fetched possibility that HSBC indeed does not own Holmes's promissory note – at this juncture, HSBC has not demonstrated to the contrary – and that Holmes does not owe his debt or repayment to HSBC. (Accord *Miller v. Carrington Mortgage Services* (N.D.Cal. Sept. 19, 2013, No. C-12-2282 EMC) 2013 U.S.Dist. Lexis 165957, *16-17 [permitted challenge to foreclosure based on break in the chain of title of the loan and deed of trust].) This appeal is from a demurrer. Whether HSBC or anyone else (other than Countrywide) had the authority to direct Recontrust (either directly or through MERS) to foreclose cannot be resolved on the face of Holmes's complaint or by taking judicial notice of a promissory note and deed of trust in which HSBC's name does not appear. Accordingly, the trial court erred in sustaining the demurrer to Holmes's cause of action for wrongful foreclosure.

A final point. The majority observes that Holmes has not tendered full repayment of his debt, which respondents asserted was a precondition to challenging the foreclosure (and which I believe underlies the majority's characterization of Holmes as having committed "predatory borrowing"). Holmes's failure to tender full repayment of his debt does not deny him the right to seek relief. "Tender is not required where the foreclosure sale is void, rather than voidable, such as when a plaintiff proves that the entity lacked the authority to foreclose on the property." (*Glaski v. Bank of America, supra,* 218 Cal.App.4th at p. 1100.) Holmes's dilemma is payment to "whom"? "Several courts have refused to apply the tender requirement where plaintiff alleges that the defendant

8

lacks authority to foreclose on the property and, thus, that any foreclosure sale would be void rather than merely voidable. . . . [W]here a sale is void at the outset, rather than voidable, the transaction is a 'nullity with no force or effect as opposed to one which may be set aside' in equity." (*Rockridge Trust v. Wells Fargo, N.A.* (N.D.Cal. Sept. 25, 2013, No. C-13-01457 JCS) __ F.Supp.2d __ (2013 U.S.Dist. Lexis 139606, *84), citations omitted.)

Holmes alleges Recontrust Company N.A. lacked authority to foreclose on his home. Because Holmes has stated facts, subject to development through discovery and proof at trial, sufficient to support a cause of action for wrongful foreclosure, I would reverse the trial court's order sustaining the demurrer.


RUBIN, J.